## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HECTOR ESCALET, on Behalf of Himself
and All Others Similarly Situated,

        Plaintiff,

     v.

CANADA DRY POTOMAC CORP.,

        Defendant.

**Civil No.  2:23-cv-00329-MMB**

## MEMORANDUM IN SUPPORT OF
## <u>JOINT MOTION TO APPROVE FLSA SETTLEMENT AGREEMENT</u>

After a year and a half of hard-fought litigation, including significant discovery and motions practice, the Parties have reached a settlement agreement finally resolving all remaining claims and defenses asserted in this conditionally certified Fair Labor Standards Act collective action.  *See* Settlement Agreement, attached as **Exhibit A** ("Settlement").

This opt-in Settlement is a fair and reasonable resolution of a bona fide FLSA dispute, it serves (rather than frustrates) the FLSA's purpose, and it merits this Court's approval.  Plaintiff has secured a $1 million settlement fund to resolve the claims of approximately 205 Eligible FLSA Collective Members. [1]  This highly favorable settlement provides each participating FLSA Opt-in Plaintiff approximately 5 hours of overtime pay

---

[1] Terms and phrases reflected in initial caps throughout this brief are terms defined in the Settlement Agreement and are intended to have the same meaning assigned in the Settlement Agreement.  For example, "Eligible FLSA Collective Members" are members of the FLSA Collective with at least one full workweek of five (5) or more days during the Relevant Period.

for every FLSA Week worked during the Relevant Period <u>plus</u> an additional, equal amount in liquidated damages.  Participating FLSA Opt-in Plaintiffs will each receive an average of $3,050, free and clear of attorneys' fees and costs, and no one will receive less than $100.  Following approval, each Eligible FLSA Collective Member will receive a detailed notice, disclosing their eligible settlement amount and explaining their rights and options. *See* Notice of Settlement, attached as **Exhibit B**. Each Eligible FLSA Collective Member can decide whether to opt into the Settlement.  If they do not wish to accept the deal, they can simply do nothing and retain all their existing rights to file their own lawsuit.

This Settlement was achieved with the help of a highly skilled mediator, Hon. Diane Welsh (Ret.), and was the product of arm's-length negotiations by experienced counsel. Moreover, the Settlement was reached only after substantial discovery and motions practice, which enabled each Party to conduct an informed risk/benefit analysis of continued litigation and construct competing damages models to aid in negotiations. The Settlement has the valuable effect of (1) providing immediate and substantial monetary relief to the putative FLSA Opt-in Plaintiffs, (2) eliminating the risks both sides would bear if this litigation continued to resolution on the merits, and (3) avoiding the time and expense of continued litigation.

The Parties respectfully request this Court's Order approving their Settlement.

## I.     FACTUAL AND PROCEDURAL HISTORY

### A.  <u>The Parties</u>.

Defendant Canada Dry Potomac Corp. is a beverage bottler and distributor supplying retailers and business customers throughout the Baltimore, Washington, D.C, Richmond and Norfolk metro areas.

Plaintiff Escalet is a Merchandiser employed at Defendant's Richmond, Virginia ("Richmond") location since July 2021. This case also involves Defendant's work locations in Springfield, Virginia ("Springfield") and Landover, Maryland ("Landover"). Merchandisers at these three locations are paid on a day rate basis (and may sometimes earn commissions), and the Fair Labor Standards Act ("FLSA") entitles them to overtime premiums for hours worked in excess of 40 hours in a workweek.  Their job duties include stocking shelves with Canada Dry products, setting up displays, and managing back stock at retail stores.

### B.  <u>Procedural History</u>.

On January 26, 2023, Plaintiff filed this suit on behalf of himself and Defendant's other day-rate Merchandisers, pursuing collective action claims for unpaid overtime under the Fair Labor Standards Act and the Virginia Overtime Wage Act, as well as Rule 23 class claims for underpaid overtime pursuant the 2021 Virginia Overtime Wage Act, Virginia Code § 40.1-29.2 (effective July 1, 2021) ("VOWA").  (ECF Doc. 1).  Specifically, Plaintiff alleges Defendant failed to provide its Merchandiser employees with a mechanism to accurately track, record, and receive pay for all their hours worked, including overtime. (ECF Doc. 1, at ¶¶ 54-55, 62-68).  As a result, Plaintiff alleges he and Defendant's other

day-rate Merchandisers are owed overtime premiums for hours worked in excess of 40 in a workweek. *See id.*

On March 13, 2023, Defendant filed a Partial Motion to Dismiss Counts III and IV for failure to state a claim under the Virginia Overtime Wage Act ("VOWA") (ECF Doc. 9). Plaintiff filed his opposition to the Partial Motion to Dismiss on March 27, 2023 (ECF Doc. 10). Defendant filed its reply brief on April 3, 2023 (ECF Doc. 11). The Court held a hearing on Defendant's Partial Motion to Dismiss on April 27, 2023 (ECF Doc. 14). On May 4, 2023, the Court denied Defendant's Partial Motion to Dismiss and Ordered Defendant to file its Answer (ECF Doc. 16). Defendant filed its Answer on May 18, 2023, substantially denying Plaintiff's allegations, denying that it owes any unpaid overtime wages, and asserting several affirmative defenses (ECF Doc. 21).

Prior to filing its Answer, on May 17, 2023, Defendant filed a Motion to Transfer Venue to the Eastern District of Virginia (ECF Doc. 20). Plaintiff opposed the transfer motion on June 7, 2023 (ECF Doc. 27), and Defendant filed a reply brief on June 14, 2023 (ECF Doc. 29). After holding a hearing (ECF Doc. 38), the Court denied Defendant's Motion to Transfer Venue on August 10, 2023 (ECF Doc. 43).

While the parties briefed Defendant's transfer motion, they also engaged in written discovery and disputed the permissible scope of conditional certification related discovery. This prompted Plaintiff to file a Motion to Compel production of pay and time records on June 6, 2023 (ECF Doc. 25). Defendant filed its opposition on June 15, 2023 (ECF Doc. 30), and Plaintiff filed a reply on June 20, 2023 (ECF Doc. 32). Ultimately, the parties

entered a stipulation on June 26, 2023, regarding the scope of discovery and agreeing to toll the statute of limitation for all putative FLSA collective members (ECF Doc. 34).

The parties continued to conduct written discovery, including production of pay and time records for the putative FLSA collective members, and they conducted depositions of Plaintiff Hector Escalet and Defendant's 30(b)(6) corporate representative.  After both sides had the opportunity to evaluate the testimony, documents, and pay data exchanged, the parties engaged in meaningful discussions regarding the course of the litigation and most efficient path to achieving a resolution.

On October 4, 2023, the parties stipulated to FLSA conditional collective action certification of the following employee group:

> All current and former day-rate Merchandisers, regardless of job title, employed by Canada Dry Potomac Corporation at its Richmond, VA, Springfield, VA, and/or Landover, MD facilities at any time during the period July 24, 2020 through the date of final judgment in this matter ("FLSA Off-the-Clock Collective").

(ECF Doc. 50).

The parties also stipulated to conditional collective action certification of Plaintiff's Virginia Off-the-Clock claim, to include the following employee group (a Virginia-based subset of the FLSA Off-the-Clock Collective):

> All current and former day-rate Merchandisers, regardless of job title, employed by Canada Dry Potomac Corporation at its Richmond, VA and/or Springfield, VA facilities at any time during the period July 24, 2020 through

5

the date of final judgment in this matter ("Virginia Off-the-Clock

Collective").

(ECF Doc. 50).

The parties also stipulated to Rule 23 class certification of Plaintiff's VOWA

Miscalculated Overtime Claim, to include the following employee group:

All current and former non-exempt, day-rate employees, regardless of actual

title, who worked for Defendant within the Commonwealth of Virginia

between July 1, 2021 and June 30, 2022 and, during that time, were paid

overtime premiums at a rate less than one and one-half times their regular

rate of pay, calculated as one-fortieth (1/40th) of all wages paid for the

workweek ("VOWA Miscalculated Overtime Class").

(ECF Doc. 50).

Per the parties' stipulation, they requested this Court stay all remaining case

deadlines, including approving and authorizing notice to the conditionally certified

collectives and Rule 23 class until after the Court resolved cross motions for partial

summary judgment on Plaintiff's VOWA miscalculated overtime claim and the parties had

an opportunity to mediate.  (ECF Doc. 50).  This Court approved the parties' stipulation

and granted the requested stay.  (ECF Doc. 60).

Subsequently, the parties filed and fully briefed their respective cross motions for

partial summary judgment on Plaintiff's VOWA miscalculated overtime claim.  (ECF

Docs. 52, 53, 54, 57, 58, 61, 63).  On January 25, 2024, the Court certified to the Virginia

Supreme Court two questions regarding the viability of Plaintiff's VOWA miscalculated

overtime claim (ECF Doc. 67).   On February 20, 2024, the Virginia Supreme Court declined to accept the certified questions of law (ECF Doc. 68).

On March 18, 2024, this Court granted Defendant's Motion for Partial Summary Judgment on Plaintiff's VOWA Miscalculated Overtime Claim and denied Plaintiff's Cross Motion for Partial Summary Judgment on Plaintiff's VOWA Miscalculated Overtime Claim (ECF Docs. 69-70).   On May 17, 2024, Plaintiff filed a Motion to Revise Summary Judgment Order and Reinstate VOWA Claims based upon an intervening case issued out of the Eastern District of Virginia (ECF Doc. 71).   That motion has not been fully briefed or ruled upon, and presently, the only claims remaining in this case are FLSA and Virginia collective action claims for off-the-clock overtime.[2]

On May 23, 2024, the parties participated in a full-day mediation session in Philadelphia, Pennsylvania, with Hon. Diane Welsh (Ret.), a skilled and respected mediator in complex wage and hour class and collective litigation.   The mediation resulted in a settlement of this matter. This Settlement resolves the remaining claims in this Lawsuit on behalf of Plaintiff and the Eligible FLSA Collective Members who choose to participate. Any putative collective member who does not wish to participate in this settlement retains all existing rights and claims. *See* discussion *infra* at Section II.

During discovery and prior to the mediation, the parties exchanged more than 14,000 pages of information, data, and documents necessary to fully and fairly evaluate the

---

[2] This Court's summary judgment decision limits the damages available to the Virginia Off-the-Clock Collective to those same damages available under the FLSA.   (ECF Docs. 69-70). Consequently, there is no distinction between these collectives for settlement purposes, and all are included in the FLSA Collective.

FLSA Collective members' claims, including employees' dates of employment, weeks worked during the relevant time period, recorded hours, and compensation data. Declaration of Tracey F. George, at ¶ 9, attached at **Exhibit C** ("George Decl."). Plaintiff and his counsel have conducted a comprehensive investigation and evaluated the facts and law relating to the claims asserted in this case. *See id.* at ¶¶ 9-10. In light of the costs, risks, and delay of continued litigation, balanced against the benefits of settlement to the Eligible FLSA Collective Members, Plaintiff and his counsel believe that the Settlement is in the best interests of the Eligible FLSA Collective Members and represents a fair, reasonable, and adequate resolution of the claims in this case. *See id.* at ¶ 11.

Defendant denied and continues to deny all of Plaintiff's material allegations in this case. Nonetheless, without admitting or conceding any liability or responsibility for damages, Defendant has agreed to settle on the terms and conditions set forth in the Settlement to avoid the burden, expense, and uncertainty of continuing litigation.

## II.    THE SETTLEMENT TERMS

The material terms of the Parties' Settlement are fully set forth in the Settlement Agreement, attached as **Exhibit A**, and are summarized as follows:

- The Parties have agreed to resolve Plaintiff's wage and hour claims, as well as the claims of Eligible FLSA Collective Members, through Defendant's creation of a $1,000,000 Settlement Fund, inclusive of Attorneys' Fees and Costs, settlement Administrative Costs, and a reasonable Service Payment to Plaintiff Escalet ("Gross Settlement Fund"). Exh. A, at ¶ 1.K.

- The Net Settlement Fund (the Gross Settlement Fund less Attorneys' Fees and Costs, settlement Administrative Costs, and Service Payment) will be allocated *pro rata* to Eligible FLSA Collective Members pursuant to an equitable formula based upon each FLSA Collective Member's average weekly gross pay and number of full weeks worked during the Relevant Period. Exh. A, at ¶ 2.B. Each Eligible Collective Member will be allocated a minimum dollar amount of $100.

- Each Eligible FLSA Collective Member will receive, via first-class mail and text message, a Settlement Notice and Opt-in Consent, disclosing their eligible settlement amount and advising them of their rights and options under the Settlement. Exh. A, at ¶ 5.D.; Exh. B. Eligible FLSA Collective Members who wish to participate in the Settlement will have 45 days to complete and return their Opt-in Consent either electronically via text link or via mail.

- In exchange for their settlement payment, Plaintiff and the FLSA Opt-in Plaintiffs will release only wage and hour claims as defined in the Settlement Agreement. Exh. A, at ¶ 1.N.

- Eligible FLSA Collective Members who choose not to participate (i.e. do not timely return an Opt-in Consent) will release nothing and retain all their existing rights. Exh. A, at ¶ 5.H.

- Because all non-participating FLSA Collective Members will retain their existing rights to sue Defendant for unpaid wages, their unclaimed

Settlement Allocation funds will revert to Defendant in anticipation of satisfying any future claims made by non-participating FLSA Collective Members. Exh. A, at ¶ 5.H.

- The average *per capita* Settlement Allocation for Eligible FLSA Collective Members is approximately $3,050.00, with a minimum allocation of $100. Exh. C., George Decl., at ¶ 6.

- Each Individual FLSA Opt-in Settlement Allocation is free and clear of any attorneys' fees, litigation expenses, mediation costs, and settlement administration costs. Exh. A, at ¶ 1.K, M., ¶ 2.

- Defendant will separately pay its own share of payroll taxes. Exh. A, at ¶ 5.E.

- Plaintiff Hector Escalet will receive a Service Payment in the amount of $5,000, subject to this Court's approval, for his efforts materially participating in and prosecuting this case on behalf of the FLSA Collective. Exh. A, at ¶ 2.C.

- FLSA Counsel will receive $330,000 (33% of the Gross Settlement Fund) for attorneys' fees, plus $40,000 for litigation costs and expenses, mediation costs, and Settlement Administration costs ("Attorneys' Fees and Costs"). Exh. A, at ¶ 2.D.

## III.   THE PARTIES' SETTLEMENT MERITS APPROVAL

To date, the Third Circuit has not decided whether court approval is necessary to effectuate an FLSA settlement and release. *See Carney v. Travelers Aid Soc'y of*

10

*Philadelphia*, No. CV 19-3599, 2020 WL 703684, at *2, n.2 (E.D. Pa. Feb. 11, 2020) (Baylson, J.). Recently, some District Courts in this Circuit have concluded the FLSA does not require or even authorize settlement approval. *See Walker v. Marathon Petroleum Corp.*, 684 F. Supp. 3d 408, 412, 415 (W.D. Pa. 2023) (refusing to decide FLSA settlement approval motion because "nothing in the text of the FLSA (or in any Third Circuit case) [] requires or even authorizes court approval for private-party FLSA settlement agreements.") (Ranjan, J.); *Alcantara v. Duran Landscaping, Inc.*, No. 2:21-CV-03947-JDW, 2022 WL 2703610, at *5 (E.D. Pa. July 12, 2022) ("[W]hile [FLSA] settlements do not need to be approved, there is nothing that prevents the Court from approving a settlement if the Parties request it.") (Wolson, J.)

However, because some Courts in this District, including this Court, have reviewed FLSA settlements for approval, the Parties submit their Settlement for approval in an abundance of caution. Because this Settlement is a fair and reasonable resolution of a bona fide FLSA dispute, and because it serves rather than frustrates the FLSA's purposes, the Parties respectfully request this Court's approval.

A.   **Standard of Review**.

The Third Circuit has not established criteria for FLSA settlement approval, so District Courts in this Circuit have looked to the standard set forth by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), when a party seeks judicial approval of an FLSA settlement agreement. *See Katz v. DNC Servs. Corp.*, No. 16-cv-5800, 2023 WL 2955887, at *10 (E.D. Pa. April 14, 2023) (collecting cases); *but see Alcantara*, 2022 WL 2703610, at *4 (questioning district courts' reliance on *Lynn's*

*Food* because "[i]t's not clear that *Lynn's Food* stands for the broad proposition that this Court and others have given it").

Applying *Lynn's Food*, this Court has held that an FLSA settlement warrants approval if it satisfies three elements:

> **First**, the agreement must resolve a bona fide dispute under the FLSA—that is, it must "reflect[ ] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute."
>
> **Second**, the settlement must be "fair and reasonable for the employee(s)."
>
> **Third**, the settlement must not "impermissibly frustrate[] the implementation of FLSA in the workplace."

*Carney*, 2020 WL 703684, at *2 (internal citations omitted).

Here, all three criteria favor approval.

## B.    The Settlement Resolves A Bona Fide FLSA Dispute.

A dispute is bona fide when it involves "'factual issues' rather than 'legal issues such as the statute's coverage and applicability.'" *Baez-Medina v. Judge Grp., Inc.*, No. CV 21-3534, 2023 WL 4633503, at *4 (E.D. Pa. July 20, 2023) (internal citations omitted). The presence of a bona fide dispute ensures that a settlement is "more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

 The dispute must fall within the contours of the FLSA, and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented. *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016) (Robreno, J.). "[A] dispute concerning overtime pay owed to class members is precisely the type of dispute

the FLSA is designed to address." *Altnor v. Preferred Freezer Servs.*, 197 F. Supp. 3d 746, 763 (E.D. Pa. 2016) (citing *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437 (1981)).

In this case, Defendant disputes virtually every one of Plaintiff's material allegations pertaining to his individual and collective FLSA off-the-clock overtime claims. Answer, ECF Doc. 21. The Parties' factual disputes include, but are not limited to: (1) whether Plaintiff and other Merchandisers worked overtime hours that Defendant failed to record in its timekeeping system (*i.e.* "off-the-clock" work); (2) whether off-the-clock work resulted in unpaid overtime premiums in each week Plaintiff and other Merchandisers worked during the relevant time period; (3) the amount of unpaid overtime worked by Plaintiff and other Merchandisers; (4) whether Plaintiff and other Merchandisers are sufficiently similar to sustain a collective action through trial of this matter; (5) whether Defendant acted with the requisite good faith to avoid paying liquidated damages; (6) whether Defendant's alleged overtime violations were willful, such that a three- (as opposed to two-) year statute of limitations applies to Plaintiff's individual and collective claims. Exh. C, George Decl., at ¶ 12.

Without question, myriad bona fide factual disputes within the contours of the FLSA are resolved with this Settlement. This approval element is satisfied.

### C.   The Settlement Terms Are Fair And Reasonable To Plaintiffs.

Public policy favors the settlement of FLSA disputes. This is particularly true in complex cases where, as here, the parties will conserve substantial resources by avoiding the time, cost, and rigor of protracted litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at

1354 (recognizing policy of encouraging settlement of FLSA litigation).  A presumption of fairness attaches to this Settlement.  *See id.* (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness).

### 1.  The Compensation To Plaintiffs Is Fair And Reasonable.

The Parties' $1 million Settlement compensates Plaintiff and approximately 205 Eligible FLSA Collective Members for roughly five (5) hours of overtime premium pay for every full week worked during the Relevant Period (based upon a 3-year statute of limitations) <u>plus</u> an additional equal amount in liquidated damages.[3] This results in an average payout of approximately $3,050 each, and no one will receive less than $100. Defendant contends this Settlement amount exceeds Plaintiff's best possible recovery at trial, and Plaintiff values this result at approximately 75%-100% of the FLSA Collective's potential recovery at trial.  Exh. C, George Decl. at ¶ 16.  Moreover, the Settlement provides an equitable distribution among Eligible FLSA Collective Members based upon their respective pay rates and number of full weeks worked during the Relevant Period.  *Id.* at ¶ 17.

Given the Parties' disputes over application of a 3-year statute of limitations, the availability of liquidated damages, and Plaintiffs' ability to establish by reasonable

---

[3] The Relevant Period is defined as the time period between July 24, 2020 through July 1, 2023. Exh. A, at ¶ 1.P.  This period reflects the benefit of a tolling agreement negotiated by Plaintiff's counsel to protect the claims of the FLSA Collective Members while the Parties engaged in discovery, briefing, and settlement discussions.  Exh. C, George Decl. at ¶14.  The Relevant Period ends July 1, 2023 because, as a result of Plaintiff filing this lawsuit, Defendant implemented a new company-wide timekeeping practice to better track and record overtime hours worked. *Id.* at ¶ 15. This is another benefit to the entire FLSA Collective, regardless of whether they choose to participate in this Settlement, secured by Plaintiff's litigation efforts. *Id.*

inference the amount of unpaid overtime hours each FLSA Collective Member worked in each week, this exceptional result—which spans a 3-year statute of limitations period, awards liquidated damages, and assumes without proof that each participant worked approximately 5 hours of unpaid overtime in every full workweek—is fair and reasonable to Plaintiff and all Eligible FLSA Collective Members. *Id.* at ¶18.

In addition to the substantial monetary compensation, this Settlement provides (1) certain and immediate relief to Plaintiff and each Eligible FLSA Collective Member who chooses to accept the deal;[4] (2) avoids the risk and uncertainty of continued litigation; and (3) eliminates the delay and expense of trial and possibly appeal. *Id.* at ¶ 19. In *Carney*, this Court explained these factors favor settlement approval.

> In addition to the risk of establishing liability, these potential hurdles suggest that the "resolution of [Plaintiff's] claims through trial would be expensive and difficult." *Gabrielyan v. S.O. Rose Apartments LLC*, No. 15-cv-1771, 2015 WL 5853924, at *2 (D.N.J. Oct. 5, 2015); *see also Lyons v. Gerhard's Inc.*, 14-06693, 2015 WL 4378514, at *4 (E.D. Pa. July 16, 2015) (Pappert, J.) ("Further litigation will be expensive and carries substantial risk for both sides.").

*Carney*, 2020 WL 703684, at *3.[5]

---

[4] Notably, as detailed above, the Settlement allows anyone dissatisfied with her/his eligible Settlement amount to decline to participate and retain all their existing rights to pursue their own claim.

[5] This Court in *Carney* explained that the Third Circuit's nine-factor *Girsh* test for approving Rule 23 class settlements does not apply to FLSA settlements. *See Carney*, 2020 WL 703684, at *2, n. 3 ("the application of Girsh to private FLSA settlements misses the mark," because the concerns that animate the Girsh analysis are not implicated by a private FLSA settlement.") (quoting *Kraus*, 155 F. Supp. 3d at 523 n.3). The *Girsh* test examines: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the

## 2.  The Attorneys' Fees And Costs Are Reasonable.

FLSA mandates the Court "shall, in addition to any judgment awarded to the plaintiff ... allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "Percentage of recovery is the prevailing method used by courts in the Third Circuit for wage and hour cases." *Solkoff v. Pennsylvania State Univ.*, 435 F. Supp. 3d 646, 658 (E.D. Pa. 2020) (citing *Keller v. TD Bank*, No. 12-5054, 2014 WL 5591033, at *14 (E.D. Pa. Nov. 4, 2014)). This method "awards a fixed portion of the settlement fund to counsel." *Id.* (citing *McGee v. Ann's Choice, Inc.,* No. 12-2664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014)).

The Parties Settlement provides Plaintiffs' Counsel a fee award equal to 33% ($330,000) of the $1 million common fund.  Exh. A, at ¶ 2.D.  This is the benchmark of reasonableness for an attorney fee award in the Third Circuit, it is less than Plaintiff's Counsel's lodestar, and this element favors approval.

---

settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).  As detailed in this Memorandum and reflected in the Settlement terms, even if the *Girsh* factors applied to FLSA settlements, this Settlement merits approval.  This is a complex, collective action case, the continued litigation and trial of which are expensive, time-consuming, and risky. Exh. C, George Decl. at ¶ 19.  Anyone dissatisfied with the Settlement's terms can opt not to participate and retain all their rights. *Id.* at ¶ 20.  The Parties have conducted significant written discovery, exchanged over 14,000 pages of documents and data, conducted depositions of Named Plaintiff and Defendant's corporate representative, and built comprehensive damages models to inform settlement negotiations. *Id.* at ¶¶ 9-10.   Establishing liability and damages is risky because neither Party has documentary proof of all hours worked by the employees in this case. *Id.* at ¶ 12. The FLSA Collective covers three work locations, and Defendant disputes they are sufficiently similar for trial on a collective basis.  *Id.* And, finally, the Settlement provides certain, immediate compensation at or near the potential recovery at trial. *Id.* at ¶ 16-19. Applying *Girsh* or not, this Settlement merits approval.

a.   The *Gunter* Factors Favor Fee Approval.

The Third Circuit "has recognized fee awards in common-fund case generally range from twenty percent to forty-five percent of the overall settlement fund. And 'courts often find a benchmark of one-third of the settlement fund appropriate[.]'" *Starnes*, 2023 WL 3305159, at *8 (quoting *Fein v. Ditech Fin., LLC*, No. 16-00660, 2017 WL 4284116, at *12 (E.D. Pa. Sept. 27, 2017).)

When evaluating the reasonableness of an attorney's fee award using the percentage-of-the-fund method, Courts in the Third Circuit consider the following factors, outlined in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000):

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id*.

There is no rigid formula for weighing the *Gunter* factors since "each case is different," and in some circumstances "one factor may outweigh the rest." *Starnes*, 2023 WL 3305159, at *8 (quoting *Stewart v. First Transit, Inc.*, No. 18-3768, 2019 WL 13043049, at *2 (E.D. Pa. Dec. 30, 2019)).

Here, all relevant *Gunter* factors confirm a 33% attorney's fee is fair and reasonable.

*First factor*, the size of the fund created and the number of persons benefitted, favors approval.  "As a general rule, as the size of a fund increases, the appropriate percentage to be awarded to counsel decreases." *Fein*, 2017 WL 4284116, at *12 (internal citations and

17

quotations omitted).  However, in this case, a $1 million common fund benefitting 205 people does not constitute a mega fund, and a 33% fee award is the benchmark for reasonableness in this Circuit.  *See id.* (approving a 33% fee award in a $1,383,000 common fund settlement benefitting 279 people); *Starnes*, 2023 WL 3305159, at *8 ("The fund here—$3,025,000.00 to resolve the claims of about 2,569 delivery associates—does not constitute a mega-fund so large to make a typical [33.3%] percentage award unreasonable."). This factor weighs in favor of approval.

*Second factor*, the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, does not apply because this is not a Rule 23 class action.  Unlike a Rule 23 settlement, FLSA settlements (like this one) are only binding on individuals who chose to opt in. Accordingly, settlement approval does not include a formal objection process.  Instead, any Eligible FLSA Collective Member who is dissatisfied with the Settlement's terms, including the attorney's fee provision, can choose not to participate and retain all their rights to pursue their own claim. That said, Plaintiff Escalet has no objection to the attorneys' fee award and Plaintiff's Counsel are not aware of any objectors.

*Third factor*, the skill and efficiency of the attorneys involved, strongly favors approval.  Plaintiff's Counsel have extensive experience in wage-and-hour collective actions throughout the United States, as detailed in the attached declarations, and they used this extensive experience to secure this favorable Settlement despite the aggressive defense mounted by Canada Dry Potomac and its own highly skilled attorneys.  Exh. C, George

Decl., at ¶¶ 21-23; Exhibit D, Declaration of Rowdy B. Meeks, at ¶¶ 4-7.  This factor favors approval.

*Fourth* and *Sixth factors*, the complexity and duration of the litigation and the amount of time devoted to the matter, both favor approval.  "FLSA claims and wage-and-hour law enforcement through litigation has been found to be complex by the Supreme Court and lower courts." *McGee*, 2014 WL 2514582, at *5 (quoting *Brumley*, 2012 WL 1019337, at *11).  This complex wage and hour case involved hotly contested collective and class claims, detailed in a six-count, 34-page Complaint.  ECF Doc. 1.  The Parties zealously advocated their positions for nearly a year and a half, as reflected in over 70 docket entries, including extensive motions practice, voluminous discovery (over 14,000 pages of documents and data), depositions, cross motions for summary judgment, building a damages model, a full-day mediation, and drafting the Settlement Agreement and approval papers.  Plaintiff's Counsel have devoted more than 600 hours litigating this case through settlement, and their work will continue through the administration process.  Exh. C, George Decl. at ¶¶ 25, 30-36.  These factors favor approval.

*Fifth factor*, the risk of nonpayment, favors approval in this contingent fee case. Because Plaintiff's Counsel accepted this case on a contingency fee basis, there is a very real risk of no recovery if this case proceeds to trial. *See Starnes*, 2023 WL 3305159, at *9 ("If this matter proceeded to summary judgment and then trial, there is a risk of no recovery considering counsel agreed to represent the delivery associates on a contingency fee basis.").  This factor favors approval.

*Seventh factor*, the awards in similar cases, "generally favors approval because judges in our district have allowed attorneys' request for one-third of the settlement fund in Fair Labor Standards Act settlements." *Id.*; *McGee*, 2014 WL 2514582, at *6 ("Class counsel's request of one-third here is well within" the range of fees awarded in common fund cases.). As this Court has recognized, "Awards in FLSA wage cases generally range from twenty percent to forty-five percent of the overall settlement." *Carney*, 2020 WL 703684, at *4. Here, the Settlement's provision of a 33% attorney fee award is consistent with fees awarded in similar cases. *See, e.g., Fein*, 2017 WL 4284116, at *12 (approving a 33% fee award in a $1,383,000 common fund settlement benefitting 279 people); *Starnes*, 2023 WL 3305159, at *8 (approving 33.3% fee award in a $3,025,000.00 common fund settlement benefitting 2,569 people). This factor favors approval.

### b. A *Lodestar* Crosscheck Supports Fee Approval.

The reasonableness of the Settlement's attorney's fee provision is further confirmed by considering the award that would have been permitted by the "lodestar" method. The Third Circuit recommends using "the lodestar method to cross-check the reasonableness of a percentage-of-recovery fee award." *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006). The lodestar formula "requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Carney*, 2020 WL 703684, at *4 (quoting *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001)).

In this case, Plaintiff's counsel's lodestar formula results in a fee of $439,935. Exh. C, George Decl., at ¶¶ 30, 38. As detailed in Plaintiff's Counsel's declaration, this formula is based upon the total attorney hours worked to date—though work will continue through

settlement administration—and billable rates within the range recognized as reasonable according to the Community Legal Services ("CLS") chart, which has been discussed favorably by the Third Circuit and this Court. *See, e.g., Carney*, 2020 WL 703684, at *4 (citing *Maldonado*, 256 F.3d at 187).

To complete the lodestar crosscheck, "the requested fee award is divided by the lodestar calculation" to arrive at a multiplier. *Id.* (citing *In re AT&T Corp.*, 455 F.3d at 164). "[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied[.]" *Starnes*, 2023 WL 3305159, at *9 (citations omitted). "A lodestar multiplier of less than one ... reveals that the fee request constitutes only a fraction of the work that the attorneys billed and thus favors approval." *Id.*

Dividing Plaintiff's requested fee by the lodestar total results in a multiplier of 0.75. Exh. C, George Decl., at ¶ 40. This low multiplier confirms that the Settlement's attorney fee award is fair and reasonable and warrants approval.

c.   The Requested Costs And Expenses Are Reasonable.

Congress, through the Fair Labor Standards Act, authorizes Courts to order defendant-employers to pay plaintiff's reasonable costs, along with their attorneys' fees. *See Starnes,* 2023 WL 3305159, at *11 (citing 29 U.S.C. § 216(b)). The Settlement provides Plaintiff's Counsel reimbursement for $40,000 in litigation costs and expenses, including court costs, Settlement Administration costs, and mediation expenses. Exh. A, at ¶ 2.D.

As detailed in Plaintiff's Counsel's declaration, the costs and expenses incurred litigating this case to date total $32,241.05. Exh. C, George Decl., at ¶¶ 44-45.   This

includes Plaintiff's share of the mediator's fee. *See id.* Additionally, Plaintiff's Counsel estimates Settlement Administration will cost between $8,000-$10,000. *See id.*, at ¶ 46. Any costs and expenses exceeding $40,000 will be paid out of Plaintiff's Counsel's attorney's fee award and will not reduce the amount available to participating FLSA Opt-in Plaintiffs. *See id.*, at ¶¶ 47-48. This is abundantly reasonable and merits this Court's approval.

### 3. The Service Payment To Named Plaintiff Is Reasonable.

The Parties' Settlement provides for a $5,000 Service Payment to Plaintiff Hector Escalet in recognition of his extensive efforts to pursue the claims raised in this case on behalf of the FLSA Collective, including the financial and reputational risks of suing his current employer, aiding in Plaintiff's Counsel's investigation, providing documents and information in response to written discovery requests, preparing for and participating in a day-long, video-taped deposition, traveling and missing work to appear at deposition in Washington, D.C., consulting with Counsel regarding the Settlement terms to aid in mediation, and otherwise assisting FLSA Counsel with the prosecution of this case. Exh. A., at ¶ 2.C.

> Factors courts consider when analyzing incentive payments include:
>
> the risk to the plaintiff in commencing litigation, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation; and the plaintiff's personal benefit (or lack thereof) purely in her capacity as a member of the class.

*McGee*, 2014 WL 2514582, at *3.

Plaintiff Escalet took a substantial risk to commence this lawsuit against his employer and achieve this Settlement on behalf of his co-workers.  Exh. C., George Decl. at ¶ 50.  No one else agreed to stand with him. *Id.* No one else sat for a grueling, day-long deposition, requiring travel and missed pay. *Id.* No one else aided in Counsel's investigation of claims and the unearthing of documentary evidence. *Id.* No one else provided insight to refute Defendant's defenses. *Id.* Plaintiff Escalet opened himself up to a year and a half of undesirable scrutiny, even turning over his personal cell phone for Defendant's examination. *Id.* at ¶ 51.  All this personal effort and attenuated risk benefited the FLSA Collective. *Id.* at ¶ 52.  Notably, after Mr. Escalet commenced this lawsuit, Defendant implemented a new timekeeping practice to better capture and record overtime pay—further benefiting all Merchandiser employees. *Id.*

In these circumstances, a modest Service Payment of $5,000 is fair and reasonable. *See, e.g., Caddick v. Tasty Baking Co.*, No. 2:19-CV-02106-JDW, 2021 WL 4989587, at *10 (E.D. Pa. Oct. 27, 2021) ("Service awards are warranted, and a modest award of $5,000.00 is within the range of similar awards approved in other collective/class actions in this district.").  The requested Service Payment is abundantly reasonable when compared to awards in other cases. *See, e.g., Diaz v. BTG Int'l Inc.,* 2021 WL 2414580, *9 (E.D. Pa. June 14, 2021) (approving two $10,000 service awards); *Rose v. Travelers Home & Marine Ins. Co.*, 2020 WL 4059613, *11 (E.D. Pa. July 20, 2020) (approving $10,000 service award); *Layer v. Trinity Health Corp.*, 2019 U.S. Dist. LEXIS 185211, *3 (E.D. Pa. Oct. 23, 2019) (approving $10,000 service award); *Myers v. Jani-King of Philadelphia, Inc.*, 2019 WL 4034736, *10 (E.D. Pa. Aug. 26, 2019) (approving $10,000 service awards).

Accordingly, the Service Payment to Plaintiff Escalet merits approval.

**D.** **The Settlement Furthers Rather Than Frustrates The FLSA's Purposes.**

As to the third and final element for Settlement approval, the Parties' Settlement will not frustrate the FLSA's purposes because (1) it contains no confidentiality requirement, and (2) the release is limited to wage and hours claims. Exh. A, at ¶ 1.N.

First, "Courts have rejected as unreasonable confidentiality provisions in FLSA settlement agreements ... [which] allow employers to silence employees who have vindicated a disputed FLSA right and interfere with Congress's intent to ensure widespread compliance with FLSA." *Starnes*, 2023 WL 3305159, at *14. Here, there is no confidentiality provision in the Parties' Settlement. Exh. A. This is a non-issue.

Second, courts in this District "frequently require litigants to limit the scope of waiver and release provisions to 'claims related to the specific litigation' when reviewing proposed Fair Labor Standard Act settlement release provisions." *Id.* Generally, "releases that preclude a plaintiff from raising 'any and all' claims against his employer are too broad." *Id.* This, too, is a non-issue because the Parties' Settlement includes a release limited to wage and hour claims. Exh. A, at ¶ 1.N.

The Parties' Settlement does not frustrate the FLSA's purposes. It is a fair and reasonable resolution of a bona fide FLSA dispute. To the extent court approval is required to effectuate this FLSA Settlement, all elements favor approval. The Parties respectfully request this Court grant their Motion.

DATED: July 19, 2024.

Respectfully submitted,

**DAVIS GEORGE LLC**

/s/ Tracey F. George
Tracey F. George (*phv*)
1600 Genessee St., Suite 328
Kansas City, MO 64102
Tel. 816-569-2629 ext. 2
Fax 816-447-3939
tracey@dgmlawyers.com

Rowdy B. Meeks (*phv*)
**ROWDY MEEKS LEGAL GROUP
LLC**
8201 Mission Rd., Suite 250
Prairie Village, KS 66208
Tel. 913 766-5585
Fax 816 875-5069
rowdy.meeks@rmlegalgroup.com

Ryan Allen Hancock (Pa No. 92590)
**WILLIG, WILLIAMS & DAVIDSON**
1845 Walnut Street, 24th Floor
Philadelphia, PA 19103
Tel. (215) 656-3679
rhancock@wwdlaw.com

*Attorneys for Plaintiffs*

**BLANK ROME LLP**

/s/ Anthony B. Haller
Anthony B. Haller (Pa. I.D. 37017)
Frederick G. Sandstrom (Pa. I.D. 313392)
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Tel: (215) 569-5500
Fax: (215) 569-5555
anthony.haller@blankrome.com
gus.sandstrom@blankrome.com

*Attorneys for Defendant*

<u>CERTIFICATE OF SERVICE</u>

I certify that I filed the foregoing Memorandum In Support Of Joint Motion To Approve FLSA Settlement Agreement via the Court's CM/ECF system on July 19, 2024, which affected service on all counsel of record in this case.

*/s/ Tracey F. George*

Tracey F. George