UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HECTOR ESCALET, on Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CANADA DRY POTOMAC CORP., <br><br> Defendant. | Civil No. 2:23-cv-00329-MMB |

### SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT, along with all exhibits hereto (collectively, the "Agreement" or "Settlement"), resolves the above-captioned matter ("the Lawsuit") and is entered into between the Named Plaintiff Hector Escalet ("Plaintiff"), on behalf of himself and the putative FLSA collective members who choose to participate in this Settlement ("FLSA Opt-in Plaintiffs"), and Defendant Canada Dry Potomac Corp. ("Defendant" or "CDPC").

### FACTUAL BACKGROUND AND RECITALS

1. Plaintiff filed the Lawsuit in the United States District Court for the Eastern District of Pennsylvania on January 26, 2023 (ECF Doc. 1).

2. On March 13, 2023, Defendant filed a Partial Motion to Dismiss Counts III and IV for failure to state a claim under the Virginia Overtime Wage Act ("VOWA") (ECF Doc. 9). Plaintiff filed his opposition to the Partial Motion to Dismiss on March 27, 2023 (ECF Doc. 10). Defendant filed its reply brief on April 3, 2023 (ECF Doc. 11).

3.  The Court held a hearing on Defendant's Partial Motion to Dismiss on April 27, 2023 (ECF Doc. 14).

4.  On May 4, 2023, the Court denied Defendant's Partial Motion to Dismiss and Ordered Defendant to file its Answer (ECF Doc. 16). Defendant filed its Answer on May 18, 2023 (ECF Doc. 21).

5.  Prior to filing its Answer, on May 17, 2023, Defendant filed a Motion to Transfer Venue to the Eastern District of Virginia (ECF Doc. 20). Plaintiff opposed the transfer motion on June 7, 2023 (ECF Doc. 27), and Defendant filed a reply brief on June 14, 2023 (ECF Doc. 29).

6.  While the parties briefed Defendant's transfer motion, they also engaged in written discovery and disputed the permissible scope of conditional certification related discovery. This prompted Plaintiff to file a Motiont to Compel production of pay and time records on June 6, 2023 (ECF Doc. 25). Defendant filed its opposition on June 15, 2023 (ECF Doc. 30), and Plaintiff filed a reply on June 20, 2023 (ECF Doc. 32).

7.  Ultimately, the parties entered a stipulation on June 26, 2023 regarding the scope of discovery and to toll the statute of limitation for all putative FLSA collective members (ECF Doc. 34).

8.  After holding a hearing (ECF Doc. 38), the Court denied Defendant's Motion to Transfer Venue on August 10, 2023 (ECF Doc. 43).

9.  The parties continued to conduct written discovery, including production of pay and time records for the putative FLSA collective members, as well as depositions of Plaintiff Hector Escalet and Defendant's 30(b)(6) corporate representative.

10. After both sides had the opportunity to evaluate the testimony, documents, and data exchanged, the parties engaged in meaningful discussions regarding the course of the litigation and most efficient path to achieving a resolution.

11. On October 4, 2023, the parties stipulated to FLSA conditional collective action certification of the following employee group:

> All current and former day-rate Merchandisers, regardless of job title, employed by Canada Dry Potomac Corporation at its Richmond, VA, Springfield, VA, and/or Landover, MD facilities at any time during the period July 24, 2020 through the date of final judgment in this matter ("FLSA Off-the-Clock Collective").

(ECF Doc. 50).

12. The parties also stipulated to conditional collective action certification of Plaintiff's Virginia Off-the-Clock claim, to include the following employee group:

> All current and former day-rate Merchandisers, regardless of job title, employed by Canada Dry Potomac Corporation at its Richmond, VA and/or Springfield, VA facilities at any time during the period July 24, 2020 through the date of final judgment in this matter ("Virginia Off-the-Clock Collective").

(ECF Doc. 50).

13. The parties also stipulated to Rule 23 class certification of Plaintiff's VOWA Miscalculated Overtime Claim, to include the following employee group:

> All current and former non-exempt, day-rate employees, regardless of actual title, who worked for Defendant within the Commonwealth of Virginia between July 1, 2021 and June 30, 2022 and, during that time, were paid overtime premiums at a rate less than one and one-half times their regular rate of pay, calculated as one-

fortieth (1/40th) of all wages paid for the workweek ("VOWA Miscalculated Overtime Class").

(ECF Doc. 50).

14. Per the parties' stipulation, they requested the Court stay all remaining case deadlines, including approving and authorizing notice to the conditionally certified collectives and Rule 23 class until after the Court resolved cross motions for partial summary judgment on Plaintiff's VOWA miscalculated overtime claim and the parties subsequently attempted to resolve the Lawsuit in mediation. (ECF Doc. 50). The Court approved the parties' stipulation and granted the requested stay. (ECF Doc. 60).

15. On October 6, 2023, Plaintiff filed his Consent Motion for Rule 23 Class Certification of his VOWA Miscalculated Overtime claim (ECF Doc. 51).

16. Subsequently, the parties filed and fully briefed their respective cross motions for partial summary judgment on Plaintiff's VOWA miscalculated overtime claim. (ECF Docs. 52, 53, 54, 57, 58, 61, 63).

17. On January 25, 2024, the Court certified to the Virginia Supreme Court two questions regarding the viability of Plaintiff's VOWA miscalculated overtime claim (ECF Doc. 67).

18. On February 20, 2024, the Virginia Supreme Court declined to accept the certified questions of law (ECF Doc. 68).

19. On March 18, 2024, the Court granted Defendant's Motion for Partial Summary Judgment on Plaintiff's VOWA Miscalculated Overtime Claim and denied Plaintiff's Cross Motion for Partial Summary Judgment on Plaintiff's VOWA Miscalculated Overtime Claim (ECF Docs. 69-70).

20. On May 17, 2024, Plaintiff filed a Motion to Revise Summary Judgment Order and Reinstate VOWA Claims based upon an intervening case issued out of the Eastern District of Virginia (ECF Doc. 71).

21. Subsequently, on May 23, 2024, the parties participated in a full day mediation session in Philadelphia, Pennsylvania, with Hon. Diane Welsh, a skilled and respected mediator in complex wage and hour class and collective litigation. The mediation resulted in a settlement of this matter. This Agreement resolves the remaining claims in this Lawsuit on behalf of Plaintiff and the putative FLSA Opt-in Plaintiffs who choose to participate in this Settlement. Any putative collective member who does not wish to participate in this settlement retains all existing rights and claims.

22. During discovery and prior to the mediation, the parties exchanged voluminous information, data, and documents necessary to fully and fairly evaluate the FLSA Opt-in Plaintiffs' claims, including employees' dates of employment, weeks worked during the relevant time period, recorded hours, and compensation data.

23. Plaintiff and his counsel have conducted a comprehensive investigation and evaluation of the facts and law relating to the claims asserted in the Lawsuit. In light of the costs, risks, and delay of continued litigation balanced against the benefits of settlement to the putative FLSA Opt-in Plaintiffs, Plaintiff and his counsel believe that the settlement as provided in this Agreement is in the best interests of the FLSA Opt-in Plaintiffs and represents a fair, reasonable, and adequate resolution of the claims in the Lawsuit.

24. Defendant denied and continues to deny all of Plaintiff's allegations in the Lawsuit. Nonetheless, without admitting or conceding any liability or responsibility for damages, Defendant

has agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement to avoid the burden, expense, and uncertainty of continuing litigation.

### TERMS OF THE AGREEMENT

In consideration of the mutual promises herein contained and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties agree as follows:

1. **Definitions Used in this Agreement**:

    A. **"Administrative Costs"** means the amount to be paid to a third-party settlement administrator for all costs in connection with consummating the terms of this Agreement as set forth in Paragraph 5.

    B. **"Approval"** means the date the Court enters an Order approving this Settlement. Approval of this Settlement shall be deemed final and effective immediately upon the Court's entry of an Order approving this Settlement.

    C. **"Attorneys' Fees and Costs"** means the amount paid to FLSA Counsel from the Gross Settlement Fund pursuant to Paragraph 2(D).

    D. **"CDPC" or "Defendant"** means Defendant named as a party in the Lawsuit, Canada Dry Potomac Corp.

    E. **"Effective Date"** means the date that either (i) the Court enters an Order approving this Settlement, or (ii) the Parties file a Rule 41 stipulation of dismissal.

    F. **"Eligible FLSA Collective Member"** means each member of the FLSA Collective (as defined below) with at least one full workweek of five (5) or more work days during the period July 24, 2020 through July 1, 2023.

    G. **"FLSA Collective"** means all current and former day-rate Merchandisers, regardless of job title, employed by Canada Dry Potomac Corporation at its Richmond, VA,

Springfield, VA, and/or Landover, MD facilities at any time during the period July 24, 2020 through May 23, 2024.

H. **"FLSA Counsel" or "Plaintiffs' Counsel"** means Rowdy Meeks Legal Group LLC, Davis George LLC, and Willig Williams Davidson.

I. **"FLSA Opt-in Plaintiffs"** means all Eligible FLSA Collective Members (as defined above) who choose to participate in this Settlement by returning an opt-in consent and endorsing or cashing their settlement check.

J. **"FLSA Weeks"** means each full workweek of five (5) or more days worked by Eligible FLSA Collective Members during the period July 24, 2020 through July 1, 2023.

K. **"Gross Settlement Fund"** means the amount of $1,000,000.00. This payment will cover the settlement allocations to Plaintiff and all Eligible FLSA Collective Members, Attorneys' Fees and Costs, Administrative Costs, and Service Payment, such that Defendants' settlement liability for claims pending in this Lawsuit, excluding the employer's share of payroll taxes, shall not exceed the combined sum of $1,000,000.00.

L. **"Named Plaintiff" or "Plaintiff"** means named Plaintiff in the Lawsuit, Hector Escalet.

M. **"Net Settlement Fund"** means the Gross Settlement Fund less Administrative Costs, Service Payment, and Attorneys' Fees and Costs.

N. **"Released Claims"** means, for Plaintiff and the FLSA Opt-in Plaintiffs, any and all claims against any of the Released Parties, arising out of or related to employment as a day-rate Merchandiser, related to the subject matter of the Lawsuit, or that were or could have been asserted in the Lawsuit based on putative violations of any federal, state or local laws pertaining to hours of work or payment of wages based on events that occurred or are alleged to

have occurred at any time through the date of this Settlement's execution, including without limitation claims under the federal Fair Labor Standards Act, and any state and/or federal wage and hour laws.

        O.     **"Released Parties"** means Defendant Canada Dry Potomac Corp. and any/all of its current and/or former parent corporations, directors, officers, fiduciaries, employees, successors, assigns, related corporations, subsidiaries, and attorneys.

        P.     **"Relevant Period"** means the time period between July 24, 2020 through July 1, 2023.

        Q.     **"Service Payment"** means the amount of the Gross Settlement Fund paid to Plaintiff for his contribution in litigating this case pursuant to Paragraph 2(C).

        R.     **"Identification Spreadsheet"** means the electronic spreadsheet which includes the name, social security number, state of employment, last known mailing address, and mobile phone number of Named Plaintiff and each Eligible FLSA Collective Member.

        S.     **"Workweek/Pay Spreadsheet"** means the electronic spreadsheet which includes the number of FLSA Weeks and the average weekly gross pay for Plaintiff and each Eligible FLSA Collective Member between July 24, 2020 through July 1, 2023.

    2.     Settlement Fund and Allocation.

        A.     Settlement Fund Allocation. Each Eligible FLSA Collective Member shall be allocated a proportionate share of the Net Settlement Fund.

        B.     Allocation of the Net Settlement Fund.

            (i)     Each Eligible FLSA Collective Member shall be allocated the same minimum dollar amount of $100 from the Net Settlement Fund ("Minimum Allocation") plus their "Individual FLSA Opt-in Share" (together, the "Individual FLSA Opt-in Settlement Allocation").

(ii) The Net Settlement Fund, less the sum of each Eligible FLSA Collective Member's "Minimum Allocation," shall equal the "FLSA Opt-in Fund".

(iii) Each Eligible FLSA Collective Member's "Individual FLSA Opt-in Share" of the "FLSA Opt-in Fund" shall be determined using the following formula:

1. **Calculate Each Eligible FLSA Collective Member's Points**. For each Eligible FLSA Collective Member, multiply his/her total number of FLSA weeks by his/her average weekly gross pay during the Relevant Period. The result is the "Individual FLSA Points."
2. **Calculate "Net Share Per Point."** Add up each of the "Individual FLSA Points" to determine the "Total FLSA Points." Divide the "FLSA Opt-in Fund" by the "Total FLSA Points." The result is the "Net Share Per Point."
3. **Calculate Each Eligible FLSA Collective Member's Share.** For each Eligible FLSA Collective Member, multiply his/her "Individual FLSA Points" by the "Net Share Per Point" to determine his/her "Individual FLSA Opt-in Share."

C. <u>Service Payment to Plaintiff.</u> Subject to Court Approval, Plaintiff Hector Escalet will receive a service payment in the amount of $5,000. This service payment is in recognition of efforts to pursue the claims raised in this Lawsuit on behalf of the FLSA Collective, including providing factual information, preparing for and participating in a deposition, traveling and missing work to appear at deposition, and otherwise assisting FLSA Counsel with the prosecution of the litigation. The service payment will be made at the same time and in addition to the payment allocated from the Net Settlement Fund. Any amounts allocated as a service payment under this Agreement, but not approved by the Court, shall be added to the Net Settlement Amount, to be proportionally distributed to the FLSA Opt-in Plaintiffs.

D. <u>Attorneys' Fees and Costs.</u> Subject to Court approval, FLSA Counsel will receive $330,000 or Thirty-three Percent (or 33%) of the Gross Settlement Fund as attorneys' fees,

plus $40,000 for litigation costs and expenses, including Settlement Administration costs. FLSA Counsel shall be responsible for the distribution and payment of any fees claimed by any attorneys responsible for the prosecution of the Lawsuit. Any amounts allocated as attorneys' fees and costs under this paragraph, but not approved by the Court, shall be added to the Net Settlement Amount. Defendants will not oppose (or have any responsibility for) Plaintiffs' request for attorney fees, expenses, or service payment before the Court or the amounts thereof.

3. Release. In accordance with the terms of this Agreement, the Named Plaintiff and the FLSA Opt-in Plaintiffs (collectively, the "Releasing Parties") shall be deemed to have irrevocably and unconditionally released and discharged the Released Parties with respect to the Released Claims (as defined above) when the Approval becomes final and no longer appealable.

4. **Approval of Settlement**.

A. Court Approval. Plaintiff's Counsel will prepare a Joint Motion for FLSA Settlement Approval ("Approval Motion") for Defendant's review and approval. The parties agree to cooperate in good faith and use their best efforts to finalize and file the Approval Motion by July 12, 2024. If the Court does not enter an Approval Order, or decides to do so only with material modifications to the terms of this Agreement, or if the Approval Order is reversed or vacated by an appellate court, then this Agreement shall become null and void, unless the parties agree in writing to modify this Agreement and the Court approves this Agreement as modified. Notwithstanding the foregoing, if the Court approves the gross amount of the Settlement Fund but determines there should be a reallocation of the FLSA Opt-in Fund (that does not affect the reversion of the Unclaimed Funds), and/or a reduction of the amount paid to FLSA Counsel, the Agreement as so modified and approved by the Court, shall remain fully binding on the Parties. If the Court concludes the FLSA does not require settlement approval or that it lacks authority to

approve this Agreement, the Agreement shall remain fully binding on the Parties.

B. **Dismissal of Action With Prejudice**. Subject to and conditioned upon the Court's Approval of the Settlement in accordance with the terms and conditions of this Agreement or, alternatively, the Court's conclusion that settlement approval is not required, Plaintiff agrees that the Lawsuit shall be dismissed with prejudice, with all parties responsible for their own costs and attorneys' fees, except as otherwise specifically provided in this Agreement. The parties agree the Court shall retain jurisdiction to enforce the terms of the Settlement or ensure proper administration of the Settlement.

5. **Settlement Administration and Payments**.

A. **Settlement Administrator.** The Settlement will be administered by a third-party administrator, Analytics LLC ("Settlement Administrator"). Reasonable fees and expenses of the Settlement Administrator shall be paid by FLSA Counsel from the Attorney's Fees and Costs portion of the Gross Settlement Fund, as provided in Paragraph 2(D).

B. **Calculation of Payment Amounts for Each Eligible FLSA Collective Member**.

(i) Within five (5) business days of the Effective Date, Defendant will provide the Identification Spreadsheet to FLSA Counsel and the Settlement Administrator, and FLSA Counsel will provide the Workweek/Pay Spreadsheet to Defendant's Counsel and the Settlement Administrator. FLSA Counsel and the Settlement Administrator will keep all information confidential. The Parties shall provide the Settlement Administrator with all necessary cooperation, including but not limited to the execution of all documents necessary to administer the Settlement. Defendant will provide any other information to the Settlement Administrator

necessary to enable it to perform the calculations described in Paragraph 2(A)-2(B) and to obtain current contact information.

(ii) Within five (5) business days of receipt of the Spreadsheets and any other information identified in the previous subparagraph, the Settlement Administrator shall calculate the settlement allocations pursuant to the formulas provided in Paragraphs 2(A)-2(B) of this Agreement, and the Settlement Administrator shall provide the calculations to FLSA Counsel and Defendant's Counsel. FLSA Counsel and Defense Counsel will review the calculations for accuracy and cooperate in good faith to resolve any calculation errors within five (5) days.

C. Funding the Settlement and Payment of Attorneys' Fees. Within ten (10) business days of the Effective Date, Defendant shall wire the total amount of the Gross Settlement Fund to the Settlement Administrator. Within five (5) business days of receipt of the Gross Settlement Fund, the Settlement Administrator shall wire the Attorneys' Fees and Costs to FLSA Counsel Davis George LLC. The Settlement Administrator will issue FLSA Counsel an IRS Form 1099 for the attorneys' fees and costs paid under this Agreement.

D. Distribution of Settlement Notice and Opt-in Consent. Within five (5) business days of the Effective Date, Plaintiff's Counsel shall provide to the Settlement Administrator the court-approved Settlement Notice and Opt-in Consent forms. As soon as practicable after completing the calculation process described in Paragraph 5(B), and no later than twenty-one (21) days after the Effective Date, the Settlement Administrator shall distribute a Settlement Notice and Opt-in Consent to each Eligible FLSA Collective Member reflecting his/her eligible settlement amount. Settlement Notices and Opt-in Consents shall be delivered via U.S. first-class mail and text message. Eligible FLSA Collective Members shall have forty-five (45)

days from the distribution date to complete and return an Opt-in Consent either electronically via text link or via mail ("Claim Period").

E. **Funding of the Employer's Share of Payroll Taxes.** Within five (5) business days of the close of the Claim Period, the Settlement Administrator shall calculate and notify the parties of the amount of Defendant's share of payroll taxes owed for the wage portion of Plaintiff and FLSA Opt-in Plaintiff's settlement amounts. Within five (5) business days of receiving notice, Defendant shall wire the total amount of its employer payroll taxes to the Settlement Administrator, who will remit the funds to the proper taxing authorities.

F. **Distribution of Settlement Payments.** At the same time it distributes the Settlement Notice and Opt-in Consents as provided in Paragraph 5(D), the Settlement Administrator shall mail Named Plaintiff his settlement check, including the Service Payment. Within ten (10) business days after close of the Claim Period and receipt of Defendant's employer share of payroll taxes, the Settlement Administrator shall issue and mail the settlement checks to the FLSA Opt-in Plaintiffs.

G. **Undeliverable Settlement Materials.** If materials sent to an Eligible FLSA Collective Member or FLSA Opt-in Plaintiff are returned as undeliverable, the Settlement Administrator shall promptly undertake reasonable steps to determine the person's current address or other contact information and, if updated contact information is located, to send the materials to the updated address.

H. **Unclaimed Funds.** Settlement funds allocated to Eligible FLSA Collective Members who do not timely return an Opt-in Consent and, instead, retain all their existing rights to pursue their own claims ("Unclaimed Funds") shall revert to Defendant CDPC so that it may defend against and/or settle future, unreleased claims. The Settlement Administrator shall return

Unclaimed Funds to Defendant according to the following schedule: 90% of Unclaimed Funds returned within <u>five (5) business days</u> of issuing settlement checks to the FLSA Opt-in Plaintiffs; remaining 10% of Unclaimed Funds returned within <u>ninety (90) days</u> of issuing settlement checks to the FLSA Opt-in Plaintiffs.

       I.    **Uncashed Checks.** Checks to FLSA Opt-in Plaintiffs shall remain negotiable for <u>6 months</u>. FLSA Opt-in Plaintiffs who do not cash their checks within <u>6 months</u> of issuance will have their checks cancelled and their check amounts sent to a state unclaimed property division.

    6.    **Tax Treatment of Payments.** For individual settlement allocations as set forth in Paragraph 2(A)-2(B) above, fifty percent (50%) of the amount(s) paid to each FLSA Opt-in Plaintiff under this Agreement shall be reported by the Settlement Administrator as wages to the appropriate taxing authorities on a Form W-2 issued to the FLSA Opt-in Plaintiff with his or her taxpayer identification number, and shall be subject to deductions for applicable taxes and withholdings as required by federal, state, and local law. The remaining fifty percent (50%) of the amount(s) paid to each FLSA Opt-in Plaintiff will be allocated to liquidated damages, interest and/or penalties and reported by the Settlement Administrator as non-wage income to the appropriate taxing authorities on a Form 1099 issued to the FLSA Opt-in Plaintiff. The Service Payment will be treated as non-wage income and reported by the Settlement Administrator to the appropriate taxing authorities on a Form 1099 issued to the Named Plaintiff. The Settlement Administrator will be responsible for issuing the appropriate W-2 and 1099 forms, and its fees and expenses in doing so shall be considered "Administrative Costs" under paragraph 1(A) of this Agreement.

7. **Court Retains Jurisdiction To Enforce Agreement.** The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Agreement, to the extent permitted by law, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement. Any action to enforce this Agreement shall be commenced and maintained only in this Court.

8. **Cooperation Clause.** The Parties agree to cooperate in good faith to effectuate the Settlement of the Lawsuit, including securing the Court's approval of the Agreement, assisting with the administration of the Settlement in accordance with the terms of this Agreement, and obtaining a final judgment.

9. **Severability.** Should any clause, sentence, provision, paragraph, or part of this Agreement be adjudged by any court of competent jurisdiction, or be held by any other competent governmental authority having jurisdiction, to be illegal, invalid, or unenforceable, such judgment or holding shall not affect, impair, or invalidate the remainder of this Agreement, but shall be confined in its operation to the clause, sentence, provision, paragraph, or part of the Agreement directly involved, and the remainder of the Agreement shall remain in full force and effect.

10. **No Waiver.** The failure to enforce at any time, or for any period of time, any one or more of the terms of this Agreement shall not be a waiver of such terms or conditions. Moreover, it shall not be a waiver of such party's right thereafter to enforce each and every term and condition of this Agreement.

11. **Authority.** Each signatory on behalf of Plaintiff and Defendant represents and warrants that such party has full authority and power to make the releases and agreements contained in this Agreement.

12. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement. The exchange of copies of this Agreement and of signature pages by facsimile transmission or other electronic means will constitute effective execution and delivery of this Agreement as to the Parties and may be used in lieu of the original Agreement for all purposes. Signatures of the Parties transmitted by facsimile or other electronic means will be deemed to be their original signatures for any purpose whatsoever.

Date: 7/10/24

ON BEHALF OF DEFENDANT CANADA DRY POTOMAC CORP.

By: _____

Printed Name: Lewis I Guntman

Title: Vice President

Date: 7/10/2024

**NAMED PLAINTIFF**

By: *Hector Escalet* (DocuSigned by)

Printed Name: Hector Escalet